# EXHIBIT 3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

TRIAL COURT OF MASSACHUSETTS

SUFFOLK SUPERIOR COURT

JOSEFINA DIAZ                )
     Plaintiff,                  )
                       )
VS.                          )
                       )   VERIFIED COMPLAINT
THE BRIGHAM AND WOMEN'S      )
HOSPITAL, INC.               )
     Defendant                   )
                       )
                       )

## PARTIES

1. Plaintiff Josefina Diaz ("Plaintiff" or "Josefina") is a 57 year-old female individual residing at 213 Cabot Road, Tewksbury, MA 01876, in Middlesex County. Plaintiff is a Hispanic female and, as such, is within the class of persons protected by M.G.L. c. 151B.

2. The defendant, Brigham and Women's Hospital, Inc. ("Defendant" or "BWH") is a Massachusetts corporation with a principal place of business at 75 Francis Street, Boston, MA 02115, in Suffolk County. Defendant at all relevant times employed more than 500 persons, and as such, is an employer as defined by M.G.L. c. 151B.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

3. On or about May 20, 2011, Plaintiff filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") alleging race and national origin-based discrimination and retaliation; a copy of this charge is attached as Exhibit 1 and is herein incorporated by reference. Said filing was timely filed within the period of the statute of limitations applicable to this case.

1

PHS 0005

4.  Greater than 90 days has elapsed from the filing of said charge with the MCAD.

5.  On or about September 30, 2011, the Plaintiff requested that the MCAD close its file on said charge to enable her to file this civil action.

6.  On or about September 30, 2011, the MCAD acceded to Plaintiff's request, enabling her to file the instant action; a copy of the MCAD's notice is attached as <u>Exhibit 2</u> hereto and is incorporated by reference.

7.  Josefina began working full time at Brigham and Women's Hospital on March 1, 2010. Her position at all times during her employment with BWH was Operations Supervisor.

8.  The BWH posting for Operations Supervisor to which Plaintiff applied stated that the position was for 40 hours per week, Monday through Friday. This 40 hour-per-week commitment was memorialized in Plaintiff's Offer of Employment from BWH, attached as Exhibit 3 hereto and incorporated by reference.

9.  Josefina's offer of employment was extended via telephone call from Leo Buckley, Executive Director for Patient Services, on February 18, 2010 following the interview process Plaintiff underwent at BWH the same day.

10. Although Josefina met with her future supervisor Heidi Crim briefly on the afternoon of February 18th, she was continually interrupted by Ms. Crim answering calls to her cellular and office phones. Josefina did not perceive any interest in her candidacy from Ms. Crim.

11. In extending the offer of employment to Plaintiff on behalf of BWH, Mr. Buckley told Josefina that he was interested in a three-year commitment from her, at the minimum.

12. Josefina's direct supervisor, Heidi Crim, was responsible for the hiring and firing of nursing and administrative staff within the Emergency Department.

2

13. Throughout the Josefina's period of employment with BWH, she was the only Hispanic employee in the Emergency Department's administrative office.

14. Within a few weeks of working at BWH, the Josefina sensed open animosity toward her from Ms. Crim. Ms. Crim exercised significant control over all of Josefina's duties as Operations Supervisor, through lengthy directive e-mails, weekly performance reviews and weekly meetings in her office. The fact that Ms. Diaz was well-regarded by her co-workers inflamed Ms. Crim's animosity.

15. By the fall of 2010, weekly meetings with Ms. Crim became offensive and humiliating. Ms. Crim did not use these meetings to motivate, encourage, constructively criticize or otherwise seek advice from Josefina on how to improve the Emergency Department. Rather, Ms. Crim used her time to put down Josefina with derogatory remarks and threats of formal written warnings and termination for simply carrying out her job responsibilities. For example, at one meeting, Ms. Crim asked Josefina if she had any grandchildren that could "help [Josefina] figure out the Emergency Department's needs," i.e. they could do her job better.

16. On September 27, 2010, Josefina was issued both a "written warning" and a "written final warning" by Ms. Crim on the basis of false allegations regarding Josefina's behavior in supposedly allowing a Business Specialist trainee to use the personal computer password of the Business Specialist overseeing her training. Josefina never approved such action, nor did anyone with first-hand knowledge of the events in question report such behavior to Ms. Crim.

17. Ms. Crim continually assigned Josefina a workload that put her into approximately 15 hours of overtime every week; Josefina became accustomed to working from home on

3

the weekends in order to meet deadlines, despite the fact that she did not receive overtime pay. Caucasian employees in the department, including Ms. Crim's assistant Alice King, were provided "comp time" for extra hours worked (i.e. the other employees could request regularly scheduled hours off during the next schedule). Josefina was denied this benefit and, despite always having stored comp time, she was forced to use benefit time whenever she wished to take time off from her schedule.

18. Eventually, Ms. Crim refused to allow Josefina to log-in to the BWH network from home after hours or on the weekends, which forced the Plaintiff to complete any work requiring network accessibility at BWH's offices. As a result, Josefina was often forced to stay at BWH from 5:00 a.m. until 6 or 7 o'clock in the evening. Josefina is not aware of Ms. Crim restricting the computer network access of any other employees to specific times and/or locations.

19. By the fall of 2010, Plaintiff had begun to experience anxiety, insomnia and headaches which were caused by the stressful environment created by Ms. Crim at our workplace. In January of 2011, Josefina's personal physician, Dr. Milton Drake, noted an increase in Plaintiff's blood pressure levels and increased the dosage of her blood pressure medication

20. During the first week of February of 2011, Josefina processed a straight-time switch between Registered Nurse Scott Robinson, a white male (who requested the day off via e-mail to the entire Nurse group), and Registered Nurse Candice Jones, an African American female who agreed to cover Mr. Robinson's shift on February 15, 2011. Both Mr. Robinson and Ms. Jones filled out time request forms according to departmental policy.

4

21. Pursuant to the advisement of Materials Manager David Buffalo, Josefina also requested part-time Business Specialist Christell Desormes to come in for a few hours on February 15, 2011 to update and organize the Department's stock of pre-packaged health forms, necessary for different Emergency Department treatments.

22. Josefina immediately posted all of these scheduling changes to OneStaff (BWH payroll and scheduling system).

23. Josefina had approved similar straight-time shifts on numerous occasions previously between white nurses. Josefina had never been approached with any questions or concerns relating to these previous approvals. This was the first time that Josefina had approved Ms. Jones to cover straight-time, and, in the case of Ms. Desormes, the first time Josefina had asked a person of color to come in for extra hours since she started working at BWH.

24. Later in the day on February 15th, 2011, Ms. Crim went to Josefina's office and inquired as to why she had made the scheduling changes described in paragraphs 19 and 20 above. Josefina explained that the RN personnel change was a straight-time switch, and that neither nurse was to receive any overtime pay. Josefina also stated that the assistance of Ms. Desormes was necessary in order to bring the Department up to a basic level of preparedness in order to assist emergency room patients.

25. At approximately 3:50 that same day, (February 15th) Ms. Crim sent Josefina an e-mail asking her to once again explain these same staffing concerns; Ms. Crim's email is attached as Exhibit 4 and is herein incorporated by reference. Josefina replied to Ms. Crim via e-mail, reiterating her reasoning for making the necessary staffing changes, apologizing for any inconvenience (despite these actions being well within Josefina's

5

responsibilities as Operations Supervisor) and stating that she would seek Crim's

approval when similar situations arose in the future; Josefina's email may be found in

Exhibit 4, and is herein incorporated by reference.

26. One week later, during the February 22nd meeting between Ms. Crim and Josefina, Ms.

Crim once again questioned Josefina as to her actions on February 15th, and accused

Josefina of failing to ensure the financial well-being of the department. Ms. Crim stated

that she had to give Josefina a "final written warning" as a result of her actions.

27. Josefina refused to sign off on the corrective action process form filled out by Ms. Crim.

Ms. Crim kept Josefina in their meeting until 6:30 p.m. on February 22nd, by which time

the Plaintiff had worked 13.5 hours for the day (5:00 a.m. – 6:30 p.m.).

28. The Final Written Warning submitted to Human Resources by Ms. Crim accused the

Plaintiff of "overstaffing without authorization" and "approving staff coverage when

there was no need"; both of these allegations are patently false. The Final Written

Warning dated February 22, 2011 is attached as Exhibit 5 and is herein incorporated by

reference.

29. Following the events of February 15th and 22nd, Plaintiff felt singled out and

discriminated against once again, and on February 24th she filed a client intake form with

the Massachusetts Commission Against Discrimination setting forth Ms. Crim's unfair

treatment of her as an employee at BWH, including what Plaintiff perceived to be Ms.

Crim's anger at Josefina for staffing two African American females. The MCAD form is

attached as Exhibit 6 and is herein incorporated by reference.

PHS 0010

30. In the first week of March, 2011, Josefina received an e-mail from Leo Buckley, Ms.
Crim's supervisor, setting up a meeting to discuss options with respect to Ms. Crim,
including the option to "buy [Josefina] out" of her employment with BWH.

31. On March 8, 2011, Josefina arrived at her meeting with Mr. Buckley. Mr. Buckley was
accompanied by an attorney, who instructed Josefina to either sign a separation
agreement immediately or be fired for "Performance" effective Friday March 11, 2011.
Josefina refused to sign the separation agreement and considers herself discharged from
BWH since this time. Mr. Buckley demanded that the Josefina return her badge, office
keys, cellular phone and beeper, which Josefina did immediately.

32. Josefina has not worked at BWH since Tuesday, March 8, 2011, and has not received
compensation beyond this time. Defendant filled Josefina's position with a white female.

33. During her period of employment at BWH, Josefina was the only Hispanic employee in
the administrative office and the only employee made subject to derogatory remarks,
weekly oversight meetings, frivolous disciplinary reports, unpaid overtime work and
restricted computer access.

34. Josefina continues to experience feelings of anger and despair over her treatment by Ms.
Crim and BWH. Josefina continues to experience insomnia and her blood pressure
medicine prescription remains at a heightened dosage.

35. Josefina was discharged approximately two weeks after filing her MCAD intake form, by
which time she had advised Mr. Buckley, Nancy Hickey, Myron McCoo (Human
Resources Vice President) and Donna Heimlich (Human Resources Manager) of the her
grievances and MCAD filing.

PHS 0011

**Count 1:  Racial Discrimination Under the Massachusetts Fair Employment Practices Act**

**(M.G.L. c.151B)**

36. Plaintiff repeats and reavers the allegations contained in paragraphs 1 through 34 and incorporates them herein by reference.

37. Josefina was at all times qualified and capable of performing the duties of her employment with the Defendant.

38. Josefina was singled out for hostile treatment (only employee forced to perform significant overtime; only employee denied network access; humiliating meetings) based on her Hispanic race by her supervisor at Defendant hospital, Heidi Crim.

39. Josefina was subjected to a number of adverse employment actions including the issuance of two baseless "final written warnings" and constructive termination based on her Hispanic race.  She was replaced by a white female.

40. Defendant's reasoning for taking such adverse employment action is entirely pretextual.

41. As a direct and proximate result of said unlawful discrimination, the Plaintiff has been made to suffer damages including loss of back pay, loss of front pay, emotional distress and compensatory damages including out of pocket medical expenses and lost earning power.


**Count 2:  Racial Discrimination Under the Federal Civil Rights Act of 1964**

**(Title VII, 42 U.S.C. 2000e et. seq)**

42. Plaintiff repeats and reavers the allegations contained in paragraphs 1 through 41 and incorporates them herein by reference.

PHS 0012

**Count 3:  Unlawful Retaliation Under the Massachusetts Fair Employment Practices**

**Act (M.G.L. c.151B)**

43. Plaintiff repeats and reavers the allegations contained in paragraphs 1 through 42 and

     incorporates them herein by reference.

44. Defendant is an "employer" within the meaning of M.G.L. c. 151B, § 4(4).

45. After learning of the grievances that Josefina submitted to the Massachusetts

     Commission Against Discrimination, and within two weeks of Josefina submitting a

     MCAD client intake form, defendant forced the Plaintiff to either sign a separation

     agreement or face involuntary termination.

46. Defendant has deliberately and willfully coerced, intimidated, threatened, and interfered

     with Plaintiff in retaliation for having reported and opposed race-based discrimination

     under c. 151B.

47. Defendant's reasons for Plaintiff's termination entirely pretextual; Plaintiff took no action

     outside her authority as Operations Manager, but was severely reprimanded for such

     actions.

48. As a direct and proximate result of defendant's violations of M.G.L. c. 151B, § 4(4),

     Josefina has suffered, and continues to suffer, damages, including but not limited to, lost

     wages, emotional distress, and compensatory damages including out of pocket medical

     expenses and lost earning power.


[Remainder of page intentionally left blank]


9

**Count 4:  Unlawful Retaliation Under the Federal Civil Rights Act of 1964**

**(Title VII, 42 U.S.C. 2000e et. seq)**

49. Plaintiff repeats and reavers the allegations contained in paragraphs 1 through 48 and

incorporates them herein by reference.

**Count 5:  Equity/Unjust Enrichment**

49. Plaintiff repeats and reavers the allegations contained in paragraphs 1 through 49 and

incorporates them herein by reference.

50. Defendant received the benefit of Josefina's work without compensating her and forced

her to use accrued benefit time while providing similarly situated employees "comp

time." Defendant should not be allowed to prosper at the expense of Josefina.

51. The overtime put in by Josefina directly benefitted the defendant. Josefina should receive

what she is entitled to in equity, by quantum meruit.  Defendant should not be enriched

by refusing to provide Josefina with comp time, forcing her to use benefit time, and

otherwise requiring her to work extra hours beyond her employment agreement.

**Count 6:  Breach of Implied Contract**

52. Plaintiff repeats and reavers the allegations contained in paragraphs 1 through 51 and

incorporates them herein by reference.

53. Defendant required that Josefina work overtime hours at home and remain at work for up

to 12 or 13 hours per day when Defendant revoked Josie's remote computer network

access.

54. Defendant entered into an implied contract with Josefina to pay her wages for all work

done and time spent for Defendant's benefit.  The offer letter, attached at Exhibit 3,

10

specifies compensation based on a 40 hour week.  Impliedly, time required by Defendant

beyond this should be compensated at the same rate.

55. Defendant breached this implied contract by failing to provide Josefina with comp time

or otherwise compensate her for extra hours worked beyond that called for in Josefina's

employment agreement.

56. Josefina was injured by defendant's breach of implied contract to pay wages.

57. Defendant's actions were willful, intentional, malicious and in reckless disregard for the

rights of Josefina.


**WHEREFORE**, Plaintiff Josefina Diaz demands judgment against the Defendant as follows:

1) Payment of lost wages and benefits from Josefina's March 8, 2011 date of termination.

2) An award of front pay from the date of judgment through February 18, 2013.

3) Compensatory damages representing 15 hours of uncompensated weekly overtime

worked by Josefina during her period of employment with Defendant.

4) For liquidated damages as a result of defendant's deliberate and willful conduct.

5) For all other compensatory damages including out of pocket medical expenses and lost

earning power.

6) For attorney fees, interest and costs.

7) For prejudgment interest

8) For other such damages as this Honorable Court sees fit.


[Remainder of page intentionally left blank]


11

PHS 0015

RESPECTFULLY SUBMITTED,
JOSEFINA DIAZ,
BY HER ATTORNEYS,


Ryan P. Avery, Esq.
BBO# 679233
464 Common Street, Suite 354
Belmont, MA 02478
V - (508) 493-4240
F – (253) 830-7396
E - ravery@brownlegalservices.com

Graeme S.R. Brown, Esq.
BBO#649940
464 Common Street, Suite 354
Belmont, MA 02478
V – (617) 851-0867
F – (253) 830-7396
E – gbrown@brownlegalservices.com


October 31, 2011

PHS 0016

## **VERFIED PLEADING**

I, Josefina Diaz, swear that the facts contained in the attached COMPLAINT and

EXHIBITS are true to my own personal knowledge, except as to matters of information

and belief and as to them I believe them to be true.


Signed and sworn this 30th day of October, 2011.


Josefina Diaz


Electronic Signature on File

## CERTIFICATE OF SERVICE

I, Ryan P. Avery, hereby certify that, on today's date, October 30th, 2011, I hand delivered a copy of the within complaint and a Trial Court summons form to the Suffolk County Sheriff's Department for service upon:

Melissa Brennan, Esq.
Office of the General Counsel
Partners Health Care
101 Merrimack Street
Boston, MA 02114

Ryan P. Avery

13

# EXHIBIT LIST

Josefina Diaz MCAD Complaint...........................     Exhibit 1

MCAD Notice of Withdrawal.............................     Exhibit 2

Offer of Employment to J. Diaz...........................     Exhibit 3

Heidi Crim E-mail Correspondence with J. Diaz........     Exhibit 4

Final Written Warning Dated 2-22-11 ....................     Exhibit 5

MCAD Client Intake Form Dated 2-24-11...............     Exhibit 6

PHS 0019

# Exhibit 1

PHS 0020

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

| MCAD DOCKET NUMBER: | EEOC/HUC CHARGE NUMBER |
|---|---|
| FILING DATE: | VIOLATION DATE: 3-11-2011 |

Name of Aggrieved Person or Organization:

Josefina Diaz
213 Cabot Road
Tewksbury, MA 01876

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:

Brigham and Women's Hospital
75 Francis Street
Boston, Massachusetts 02115

Charge of Discrimination based on:

Race; National Origin; Retaliation for Reporting Discrimination

The particulars are:

See attached affidavit of Josefina Diaz.

Signed under the penalties of perjury

Complainant

## JOSEFINA DIAZ - AFFIDAVIT FOR MCAD CHARGE

1. My name is Josefina Diaz. My address is 213 Cabot Road, Tewksbury, MA 01876. I make affidavit as follows:

2. I am a 57 year old Hispanic female who was born in Santo Domingo, Dominican Republic.

3. I began working full time at Brigham and Women's Hospital ("BWH"), which employs over 100 employees and is located at 75 Francis Street, Boston, Massachusetts 02115, on March 1, 2010. My position at all times during my employment with BWH was Operations Supervisor.

4. The BWH posting for Operations Supervisor to which I applied stated that the position was for 40 hours per week, Monday through Friday. See Attached Job Application of Josefina Diaz (Exhibit A). This 40 hour-per-week commitment is memorialized in my Offer of Employment from BWH (Exhibit B), dated February 22, 2010.

5. My direct supervisor while employed at BWH was Emergency Department Nursing Director Heidi Crim. Ms. Crim was responsible for the hiring and firing of nursing and administrative staff within the Emergency Department. However, my offer of employment was extended via telephone call from Leo Buckley, Executive Director for Patient Services, on February 18, 2010 following my interview process at BWH the same day. Although I met with Ms. Crim briefly during that afternoon, we were continually interrupted by Ms. Crim answering calls to her cellular and office phones on routine matters. I did not feel a sense of welcoming or interest in my candidacy from Ms. Crim.

6. In extending the offer of employment to me on behalf of BWH, Mr. Buckley told me that he was interested in a three-year commitment from me, at the minimum.

7. Throughout my period of employment with BWH, I was the only Hispanic employee in the Emergency Department Administrative Office. Within a few weeks of working at BWH, I sensed open animosity toward me from Ms. Crim.

8. BWH employed only two African American nurses in the Emergency Department during my period of employment, including RN Candice Jones.

9. Ms. Crim exercised significant control over all of my duties as Operations Supervisor, through lengthy directive e-mails, weekly performance reviews and weekly meetings in her office. See Attached E-mail from Heidi Crim Dated February 2, 2011 (Exhibit C), which refers in the subject line to our Operations Supervisor-Nursing Director meeting from the previous week.

1

10. By the fall of 2010, the weekly meetings with Ms. Crim became offensive and humiliating. Ms. Crim did not use these meetings to motivate, encourage, constructively criticize or otherwise seek advice from me on how to improve the Emergency Department. Rather, she used her time to put me down with derogatory remarks and threats of formal written warnings and termination for simply carrying out my job responsibilities. For example, at one meeting, Ms. Crim asked me if I had any grandchildren that could "help me figure out the Emergency Department's needs," i.e. they could do my job better.

11. The fact is, I was very good at my job and was well regarded by my co-workers. This seemed to inflame Ms. Crim's racial animus toward me. When not being openly hostile towards me, she would mockingly say "Oh Josie, thank you for being you."

12. Ms. Crim continually assigned to me a workload that put me into approximately 15 hours of overtime every week, and I became accustomed to working from home on the weekends in order to meet deadlines, despite the fact that I did not receive overtime pay. I am not aware of any other employee to whom Ms. Crim assigned overtime hours without pay.

13. Eventually, Ms. Crim refused to allow me to log-in to the BWH network from home after hours or on the weekends, which forced me to complete any work requiring network accessibility at BWH physically. As a result, I was often forced to stay at BWH from 5:00 a.m. until 6 or 7 o'clock in the evening. I am not aware of Ms. Crim restricting the computer network access of any other employees to specific times and/or locations.

14. By the fall of 2010, I had begun to experience anxiety, insomnia and headaches which were caused by the stressful environment created by Ms. Crim at our workplace. In January of 2011, my personal physician, Dr. Milton Drake, noted an increase in my blood pressure levels and increased the dosage of my blood pressure medication.

15. During the first week of February of 2011, I processed a straight-time switch between Registered Nurse Scott Robinson, a white male (who requested the day off via e-mail to the entire Nurse group), and Registered Nurse Candice Jones, an African American female who agreed to cover Mr. Robinson's shift on February 15, 2011. Both Mr. Robinson and Ms. Jones filled out time request forms according to departmental policy.

16. Per the advisement of Materials Manager David Buffalo, I also requested part-time Business Specialist Christell Desormes to come in for a few hours on February 15, 2011 to update and organize the Department's stock of pre-packaged health forms, necessary for different Emergency Department treatments.

2

17. I immediately posted all of these scheduling changes to OneStaff (BWH payroll and scheduling system).

18. I had approved similar straight-time shifts on numerous occasions previously between white nurses. I had never been approached with any questions or concerns relating to these previous approvals. This was the first time I had approved Ms. Jones to cover straight-time, and, in the case of Ms. Desormes, the first time a person of color had been asked to come in for extra hours since I started at BWH.

19. Later in the day on February 15, Ms. Crim came to my office and inquired as to why I had made the scheduling changes described above. I explained that the RN personnel change was a straight-time switch, and that neither nurse was to receive any overtime pay. I also stated that the assistance of Ms. Desormes was necessary in order to bring the Department up to a basic level of preparedness in order to assist our patients.

20. At approximately 3:50 that same day, (February 15) Ms. Crim sent me an e-mail asking me to once again explain these same staffing concerns. I sent Ms. Crim an e-mail reiterating my reasoning above, apologizing for any inconvenience (despite these actions being well within my responsibilities as Operations Supervisor) and stating that I would seek her approval when similar situations arose in the future. See Diaz E-mail to Crim on 2/15/11 (Exhibit D).

21. Following the events of February 15, I felt singled out and discriminated against once again, and filed a letter with the Massachusetts Commission Against Discrimination setting forth Ms. Crim's unfair treatment of me as an employee at BWH, including what I perceived to be her anger at me for staffing two African-American females.

22. One week later, during our weekly meeting on February 22, Ms. Crim once again questioned me as to my actions on February 15, and accused me of failing to ensure the financial well-being of the department. Ms. Crim stated that she had to give me a "final written warning" as a result of my actions. I was totally surprised and upset at this news, and I told Ms. Crim that I would not sign off on the corrective action process form. Ms. Crim kept me at our meeting until 6:30 p.m. on February 22, by which time I had worked 13.5 hours for the day (5:00 a.m. – 6:30 p.m.).

23. Later that day, Ms. Crim provided me with a copy of her Final Written Warning, which was submitted to Human Resources. This warning accused me of "overstaffing without authorization" and "approving staff coverage when there was no need." See Corrective Action Process Form, Dated 2/22/11 (Exhibit E). Both of these allegations are patently

3

false. In my position as Operations Supervisor, I was responsible for staffing all available RNBS and ESA shifts; no authorization was required to approve any of these changes to the Emergency Department schedule, and I had approved similar straight time shift coverages in the past without issue. Furthermore, the switch between Mr. Robinson and Ms. Jones did not leave the department overstaffed at the RN position, but at the same level as it would have been if no changes had been approved. Meanwhile, the approval for Business Specialist Christell Desormes to come in and work a few hours of straight time was advised by Materials Manager Dave Buffalo, who had informed me that the department's stockroom of health forms was a disorganized mess. See Exhibit D. This situation posed a legitimate risk to the department's ability to serve its patients in a responsible and timely manner, and therefore the services provided by Ms. Desormes on the day in question were far from 'unnecessary.'

24. In the first week of March, I received an e-mail from Leo Buckley, Ms. Crim's supervisor, setting a meeting to discuss options with respect to Ms. Crim, including discussing an option to "buy me out" of my employment with BWH

25. On March 8, 2011 I arrived at my meeting with Mr. Buckley. Mr. Buckley was accompanied by an attorney, who instructed me to either sign a separation agreement immediately or be fired for "Performance" effective Friday March 11, 2011. I refused to sign the separation agreement and considered myself discharged from my employment with BWH. Mr. Buckley demanded that I return my badge, office keys, cellular phone and beeper, which I did immediately.

26. I have not worked at BWH since Tuesday, March 8, 2011, and have not received compensation beyond this time

27. I feel that I was discriminated against throughout the course of my employment at BWH on the basis of my race. During my period of employment at BWH, I was the only Hispanic employee in the administrative office and the only employee made subject to derogatory remarks, weekly oversight meetings, frivolous disciplinary reports, unpaid overtime work and restricted computer access.

28. I continue to experience feelings of anger and despair over my treatment by Ms. Crim and BWH. I continue to experience insomnia and my blood pressure medicine prescription remains at a heightened dosage.

4

PHS 0025

29. I feel that I was terminated on the basis of retaliation for reporting perceived discrimination to the Massachusetts Commission Against Discrimination. I did not receive a disciplinary report until February 22, 2011, by which time I had submitted my report to MCAD and advised Mr. Buckley, Nancy Hickey, Myron McCoo (Human Resources Vice President) and Donna Heimlich (Human Resources Manager) of the report.

Signed under the penalties of perjury.

_Josefina Diaz_

Josefina Diaz

Date: _5 - 17 - 2011_

5

PHS 0026

Exhibit 2

PHS 0027

Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place – Room 601
Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

September 30, 2011

Ryan P. Avery, Esq.
Brown Law Firm LLC
464 Common Street, #354
Belmont, MA 02478

Joanne Crowley Smith
Corporate Director, Employee/Labor Relations
Partners HealthCare System, Inc.
101 Merrimac Street
Boston, MA 02114

RE: Josefina Diaz v. Brigham & Women's Hospital
MCAD Docket Number: 11BEM01443
EEOC/HUD Federal Charge Number: 16C-2011-01688

Dear Parties:

The Commission has received notice that the Complainant intends to file a civil action in Superior Court in the above-referenced matter. Pursuant to M.G.L. Chapter 151B, § 9 (Chapter 478 of the Acts of 1974), the complaint before the Commission is hereby dismissed without prejudice as to the merits.

Please be advised that pursuant to 804 CMR 1.15(2), the parties are required to serve upon the Commission's General Counsel a copy of any final order obtained in court. In addition, any party filing an appeal of such final order is required to serve a notice of appeal upon the Commission's General Counsel.

Please be advised the Complainant is barred from subsequently bringing a complaint on the same matter before this Commission.

Very truly yours,

Sunila Thomas-George
Investigating Commissioner

/tt

Cc:

Josefina Diaz

2011-09-30 19:54:44 (GMT)                                    From: Graeme Brown, Esq.

)

## COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION

From: RYAN AVERY, Esq.

To:

Massachusetts Commission Against Discrimination
One Ashburton Place, Room 601
Boston, MA 02108
FAX: 617-994-6024

Sunila Thomas - George (Counsel
KRIS Librera (Investigator)

Re: Diaz v. Brigham & Women's Hospital

MCAD Docket Number 11BEM01443; EEOC No: 16 C-2011-01688

Dear Commissioner:

I hereby request permission to withdraw my complaint filed with this Commission and if applicable, from
the Equal Employment Opportunity Commission, for the following reason:

(X)   I wish to file a private right of action in civil court.

( )   I have reached a satisfactory settlement with the Respondent.

( )   I no longer intend to pursue this matter at the Commission.

Authorization for this request is indicated by the following Certification of Withdrawal by Complainant OR
Certification of Authorization to Withdraw by Counsel.

---

**Certification of Withdrawal by Complainant**

I have been advised that it is unlawful for any person or persons to threaten, intimidate, or harass me
because I filed a complaint. I have not been coerced into requesting this withdrawal.

Date _____                    _____
                                         Complainant's signature

                                         _____
                                         Print Name

---

**Certification of Authorization to Withdraw by Counsel**

I have been authorized as Counsel of Record for the Complainant and have the authority and permission
to sign for the Complainant in this matter. I have advised the Complainant that it is unlawful for any
person or persons to threaten, intimidate, or harass him/her because s/he filed a complaint.
Complainant has represented that s/he has not been coerced into requesting this withdrawal.

9-30-2011                               _____
Date                                     Attorney signature

                                         RYAN P. AVERY
                                         Print Name

---

MCAD Withdrawal Form June 2010

# Exhibit 3

PHS 0030



**BRIGHAM AND
WOMEN'S HOSPITAL**

Brigham and Women's Hospital, 75 Francis St., Boston, MA 02115

February 22, 2010

Josefina Diaz
213 Cabot Road.
Tewksbury, MA 01876

Dear Josefina:

I am pleased to confirm our offer of a 40-hour day Operations Supervisor Position in the Emergency Department at the Brigham and Women's Hospital, reporting to Heidi Crim. Your agreed upon start date is March 01, 2010 at an hourly rate of $25.00.

This offer is contingent upon the successful completion of our review of your background which includes a Criminal Offender Record Information (CORI) check, an OIG check, a pre-employment health screening and proof of your eligibility to comply with the Immigration Reform Control Act of 1986. NOTE: If your CORI check is returned as unfavorable, a thorough review of the situation will take place and based upon the outcome of that review, your employment at Brigham and Women's Hospital may be terminated.

To facilitate your start, a health screening has been scheduled for you on 02/24/10 at 10:30am in Occupational Health Services (OHS). To avoid any delay in your processing, please remember to bring your immunization records with you to OHS.

You have also been scheduled to attend New Employee Orientation (NEO) on Monday, March 01, 2010 beginning promptly at 8:30 a.m. at our One Brigham Circle location, 4th floor RM4-002B. One Brigham Circle is conveniently located on the corner of Huntington Avenue and Tremont Street, directly across from the Brigham Circle MBTA stop. Please complete and bring the enclosed paperwork with you to orientation. Also, be prepared to present documents establishing your identity and eligibility to work in the United States. (A list of acceptable documents is enclosed). Please note that Registration begins promptly at 8:00 a.m. You cannot begin working until you have completed orientation. Late arrival will result in a one week delay in your start date.

Brigham and Women's Hospital operates in an electronic payroll environment. Paper checks and advices are not distributed as a part of the normal payroll process. Your paycheck will be electronically deposited, as directed by you, into the banking source of your choice. Therefore, during your first week of employment please use PeopleSoft Self serve to enroll in direct deposit to facilitate the pay process.

It should also be noted that BWH is an "At Will Employer," and as such, you and/or the Hospital may terminate your employment at any time. Please be aware that your continued employment is contingent upon, among other things, adequate funding from research grants or other outside sources to cover the costs of your salary and benefits.

If you have any questions, feel free to contact me at 617-582-0113. Donna Neimlich, the Human Resources Consultant assigned to your area can be reached at 617-582-0114 to assist you with any Human Resource concerns.

We look forward to having you as a member of our staff and hope that your new position will be a valuable experience for you.

Regards,

*Erin Cathron*

Erin Cathron
Staffing Specialist

**The *best place* to belong.**

We are an EEO, AA and VEVRAA employer. A teaching affiliate of Harvard Medical School.

Exhibit 4

PHS 0032

**Crim, Heidi**

| | |
|---|---|
| **From:** | Diaz, Josefina A. |
| **Sent:** | Tuesday, February 15, 2011 3:50 PM |
| **To:** | Crim, Heidi |
| **Subject:** | RE: Over staffing |

Heidi,

The BS I have approved to come in straight time to work on many of the packages that we need because we are very low in quantity as well as much disorganization in the stockroom. While talking to David Buffalo yesterday, he informed me that he has no idea what was there anymore with the mess. I thought that it would be beneficial to get organized on that area.

Jones was asked by Scott Robinson to cover his shift because he was not able to come in to work and needed the day off. Again, since he was scheduled, I approved her to make sure we were not under staff.

I will check with you in the future before I approve this type of transactions, I did them with the best intentions while trying to proactive correct our stock quantities and stockroom organization as well as for making sure we did not ended up short of staff.

I am sorry for any inconvenience my decisions have caused, but again, should these situation arrive in the future, I will make sure to give them to you for your approvals.

Thanks,

Josie

| | |
|---|---|
| **From:** | Crim, Heidi |
| **Sent:** | Tuesday, February 15, 2011 2:20 PM |
| **To:** | Diaz, Josefina A. |
| **Subject:** | Over staffing |

Josie
Reviewing today's SCUT. Candice Jones, RN and Christelle Desormes, BS we approved to come in extra, please explain.
We were over on RNs and at core staffing for BS.
Thank you
Heidi

1

PHS  0033

# Exhibit 5

PHS 0034

**BRIGHAM AND
WOMEN'S HOSPITAL**

50

CORRECTIVE ACTION PROCESS FORM

100309613

EMPLOYEE Josie Diaz                                    EMPLOYEE ID # ~~023~~~~58253~~

DEPARTMENT Emergency Dept.              SUPERVISOR Heidi Crim

**CORRECTIVE ACTION STEP:**

Date of Discussion: 2/22/11

- ☐  Initial Counseling
- ☐  Written Warning
- ☒  Written Final Warning
- ☐  Termination

**PREVIOUS CORRECTIVE ACTION IN PAST 12 MONTHS:**

- ☒  Verbal Counseling/ Initial Counseling/ Coaching(date)   Weekly last meeting 3/9/11
- ☐  Written Warning (date)
- ☒  Written Final Warning (date) / RE·HIPAA          5/2010
- ☐  Termination (date)

**DESCRIPTION OF CONCERNS/POLICY VIOLATION:**

1. Failure to maintain systems to ensure financial well-being of the department.
   A. Overstaffed BS without authorization.
   B. Approved staff coverage when there was not a need.

**CORRECTIVE ACTIONS REQUIRED:**

- Develop and maintain data systems to ensure proper staffing of the unit.
- Continue to meet with Director weekly, to review.

Follow up date:

The purpose of the Corrective Action Process is to identify a concern or a policy violation and thereby establish a process for documenting needed corrections. This process requires commitment to improvement. Failure to achieve and sustained satisfactory performance or to resolve problems may lead to a further step in the Corrective Action Process up to and including termination.

Refused to sign - took copy.
EMPLOYEE SIGNATURE   DATE                    SUPERVISOR SIGNATURE   DATE

Heidi O. Crim   2/22/11
DIRECTOR SIGNATURE   DATE                    WITNESS SIGNATURE   DATE

☐ Copy given to Employee                    ☐ Original sent to Human Resources
Revised August 2009

PHS 0035

Exhibit 6

PHS 0036

This is not a Complaint Form and will not be produced as a certified Complaint   Original 3/29

**MCAD**

**INTAKE INTERVIEW FORM**

Please provide the Commission with the following information:

First Name: Josefina   Middle Initial: A   Last Name: Diaz

Social Security No. (optional): 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   DOB: 03/11/1989

Address: 212 Cabot Rd.   City: Newburg   State: MA   Zip: 01879

Phone No: 978-807-8975   Sex: F   Marital Status (optional): M   Race: Hispanic

Emergency Contact Information. Name: Luis A. Diaz   Phone No: 978-297-8975

Name of Employer: Brigham Women's Hosbl.   Address: 75 Francis St.

City: Boston   State: MA   Zip: 60115   Phone No: 617-732-5500

Primary Business of Company: Health Care   Occupation/Job Title: Operation Supervisor/Employed

No. of Employees: 200+   Name of person(s) who discriminated against you: HEIDI KRIM

Please check off appropriate box:

[X] Employment   ( ) Public Accommodations   ( ) Education   ( ) Credit   ( ) Other

Type of Discrimination (please check off appropriate box (es)):

[X] Race & Color   [X] National Origin   ( ) Age   ( ) Sex/Gender   ( ) Sexual Harassment
( ) Sexual Orientation   ( ) Disability/Reasonable Accommodation   ( ) Retaliation
( ) Religion/Religious Accommodation   ( ) Criminal Record   ( ) Maternity Leave   ( ) Genetic

Please indicate the date of the last act of discrimination:

Please summarize the employment decision that was taken against you by your employer:

Please state why you feel these actions were discriminatory:

List all the people who were given more favorable treatment than you: Alice   King

Signed by: _____   Date: _____

DISPOSITION SHEET: Overall: _____   If Complaint Filed _____   Revised Jun 2011